# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Aron Richline, : 
              Petitioner : 
  : No. 1512 C.D. 2024
          v. : 
  : Submitted: February 4, 2026
Tractor Supply Company (Workers' : 
Compensation Appeal Board), : 
             Respondent : 


BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE LORI A. DUMAS, Judge
                HONORABLE MARY HANNAH LEAVITT, Senior Judge


***OPINION NOT REPORTED***

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                                **FILED: July 2, 2026**

Aron Richline (Petitioner) has petitioned this Court to review an adjudication of the Workers' Compensation Appeal Board (Board), issued October 23, 2024, which affirmed the decision of the Workers' Compensation Judge (WCJ) to grant Petitioner's penalty petition in part. As discussed in further detail below, the WCJ seemingly considered evidence relevant only to payments in June and July 2023, and it is unclear as to what dispositive findings were made regarding other alleged untimely payments outside of those two months. After careful review, we reverse and remand the matter for proceedings consistent with this decision.

# I. BACKGROUND[1]

Petitioner's claim petition was granted on April 21, 2023, based upon a stipulation of the following facts. On October 24, 2022, Petitioner sustained a work-related injury described as a bilateral sacroiliac joint dysfunction. As a result, Petitioner was entitled to temporary total disability benefits beginning October 25, 2022, and ongoing. Tractor Supply Company (Employer) was to make payment of these benefits retroactively, along with statutory interest. Litigation costs were also awarded. The stipulation did not address whether Employer was entitled to a credit for repayment of short-term and long-term disability benefits paid to Petitioner.

On May 24, 2023, Petitioner filed a penalty petition against Employer, alleging that Employer violated the Workers' Compensation Act (Act)[2] by failing to pay Petitioner his full benefits in accordance with the April 21, 2023 decision of the WCJ.

After two hearings, the WCJ made several findings.[3] First, the WCJ found that, following his work injury, Petitioner had received short-term and long-

---

[1] Unless otherwise stated, we derive the background from the Board's decision, which is supported by substantial evidence. *See* Bd.'s Op. & Order, 10/23/24; *see also* WCJ's Dec., 2/7/24.

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710. The Act's section numbers are distinct from "the sections provided in Purdon's Pennsylvania Statutes, which is an unofficial codification of Pennsylvania law." *Herold v. Univ. of Pittsburgh*, 329 A.3d 1159, 1166 n.1 (Pa. 2025). For clarity, we may refer to provisions of the Act "only by their Purdon's citation." *Id.*

[3] We note that although Petitioner's penalty petition asserts that benefits were never received for *any* months per the stipulation, dating back to October 2022, and Petitioner also testified to the same at the hearing, *see* Penalty Pet., 5/24/23; Hr'g Tr., 8/23/23, at 17-19, the WCJ's hearings mostly concerned only the benefits paid to Petitioner in June and July 2023. At the first hearing, the WCJ suggested the relevant inquiry was whether Employer had properly asserted a credit against the benefits paid to Petitioner in June and July 2023. *See* WCJ's Dec., 2/7/24, at 7, Finding No.19, "at the June 21st hearing, the issue was [Petitioner] was receiving less wage loss benefits due to [Employer] taking a credit," which was during the months of June and July 2023; *see also* Finding No. 3, "[a]t the June 21 2023 hearing, [Petitioner] through his counsel, advised the pending

2

term disability benefits until the end of May 2023, and then he began receiving workers' compensation benefits around the end of May or in early June 2023. At that point, Petitioner entered into an agreement with Hartford Insurance, Employer's disability carrier, to reimburse Hartford Insurance for all disability benefits previously paid. The WCJ further found that, from June 2023 through July 2023, Employer appeared to take an improper credit on Petitioner's workers' compensation benefits, thereby reducing his weekly compensation rate.

The WCJ also observed an apparent dispute between Employer and Hartford Insurance regarding entitlement to reimbursement of the disability benefits.[4] Employer asserted that it fully funded Petitioner's short-term and long-term disability benefits and that Hartford Insurance functioned merely as a third-party administrator; therefore, Employer claimed it was entitled to a credit against Petitioner's weekly workers' compensation benefits. Hartford Insurance, in contrast, maintained that it issued the disability benefits as the insurer and held a lien against Petitioner for reimbursement once he began receiving workers' compensation. Petitioner's testimony was consistent with Hartford Insurance's position, and he introduced into evidence the reimbursement agreement reflecting Hartford's lien for all short-term and long-term disability benefits paid as a result of the work injury. Employer acknowledged that Hartford received the premium payments for the disability policy and was entitled to reimbursement.

---

issue involves a credit." The motivation behind this narrow focus of the hearings appears to be related to a dispute between Employer and Hartford Insurance regarding the repayment of short-term and long-term disability benefits. *See* Hr'g Tr., 6/21/23 at 7; *see generally* Hr'g Tr., 8/23/23.

[4] The WCJ did not make additional findings concerning the credibility of the testimony as to this dispute. The WCJ only articulated the dispute and the testimony presented. *See generally* WCJ's Dec., 2/7/24.

The WCJ nevertheless concluded that Petitioner's testimony that he had not been paid in accordance with the parties' stipulation as of August 2023 was not credible, because the record contained no evidence establishing Employer issued payment, when Petitioner actually received payment, or the amount of that payment per the stipulation. Ultimately, the WCJ determined that Petitioner established that Employer had violated the Act and underpaid Petitioner in the amount of $4,300. The WCJ granted the penalty petition and awarded a 50 percent penalty, totaling $2,150. The WCJ also awarded attorney's fees and litigation costs.

Petitioner appealed to the Board, asserting that the WCJ had erred in calculating the penalty. Specifically, according to Petitioner, the 50 percent penalty should not have been calculated solely on the underpaid benefits from June and July 2023, but rather on the total amount of benefits retroactively due since October 25, 2022, which Petitioner alleged were unpaid as well. The Board affirmed the WCJ, noting that the only evidence Petitioner had presented was Employer's underpayment in June 2023 and July 2023. Because penalties under the Act require proof of a violation, the Board reasoned, the WCJ could impose a penalty only on the amount for which a violation was affirmatively established by Petitioner, $4,300 for June and July 2023, not the entire amount of benefits dating back to October 2022. Petitioner timely appealed to this Court.

## II. DISCUSSION[5]

In the only issue raised on appeal, Petitioner contends that he is entitled to a 50 percent penalty imposed on the total amount of benefits that Petitioner alleges

---

[5] This Court's review "is limited to determining whether there has been a violation of constitutional rights, errors of law, or a violation of [Board procedures], and whether necessary findings of fact [are] supported by substantial evidence." *Lehigh Cnty. Vo-Tech Sch. v. Workmen's Comp. Appeal Bd. (Wolfe)*, 652 A.2d 797, 799 (Pa. 1995); *Coyne Textile v. Workers' Comp. Appeal Bd. (Voorhis)*, 840 A.2d 372, 375 (Pa. Cmwlth. 2003).

4

were underpaid since October 25, 2022. *See* Pet'r's Br. at 11-14. According to Petitioner, the WCJ abused his discretion when he rejected Petitioner's testimony and the undisputed facts that no workers' compensation payments had been paid until the end of May 2023. *Id.* at 13. Petitioner further contends that Employer "has offered no excuse for its repeated failure to obey" the stipulation and that he is suffering as a result. *Id.* at 12.

In a penalty petition proceeding, the petitioner bears the burden of proving that the employer violated the Act. *See CVA, Inc. v. Workers' Comp. Appeal Bd. (Riley)*, 29 A.3d 1224, 1227 (Pa. Cmwlth. 2011). Where a violation of the Act is proven, the imposition of a penalty is a matter within the discretion of the WCJ. *Budd Co. v. Workers' Comp. Appeal Bd. (Kan)*, 858 A.2d 170, 176 (Pa. Cmwlth. 2004). Penalties may be assessed in accordance with Section 435(d)(i) of the Act. *See* 77 P.S. § 991(d)(i); *see also City of Phila. v. Workers' Comp. Appeal Bd. (Andrews)*, 948 A.2d 221 (Pa. Cmwlth. 2008).

Where substantial evidence supports the WCJ's findings of fact, those "findings are conclusive on appeal, despite the existence of contrary evidence." *Miller v. Workers' Comp. Appeal Bd. (Millard Refrigerated Servs. & Sentry Serv.)*, 47 A.3d 206, 209 (Pa. Cmwlth. 2012) (citation omitted). In assessing whether substantial evidence supports the decision, we review the record and all reasonable inferences therefrom in the light most favorable to the prevailing party before the fact finder. *See Elliott Turbomachinery Co. v. Workers' Comp. Appeal Bd. (Sandy)*, 898 A.2d 640, 647 (Pa. Cmwlth. 2006). The relevant inquiry in a substantial evidence analysis is not whether "there is evidence in the record which supports a factual finding contrary to that made by the WCJ," but rather, "whether there is any evidence which supports the WCJ's factual finding." *Hoffmaster v. Workers' Comp.*

*Appeal Bd. (Senco Prods., Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998) (citation omitted). "[T]he WCJ has the exclusive province to determine the credibility of witnesses and to resolve conflicting evidence." *Habib v. Workers' Comp. Appeal Bd. (John Roth Paving Pavemasters)*, 29 A.3d 409, 412 (Pa. Cmwlth. 2011) (citation omitted).

First, we note that substantial evidence supports the WCJ's finding that Petitioner established a violation of the Act when Employer improperly reduced Petitioner's benefits in June and July 2023. Petitioner testified that, although his benefits were reinstated and payments resumed during those months, he received only a fraction of the amount owed to him because Employer took a credit against his weekly indemnity benefits. *See* Hr'g Tr., 8/23/23, at 20-21. The WCJ credited this testimony, and Employer presented no evidence to rebut it. *See id.*; WCJ's Dec. at 7.

Petitioner does not challenge that determination but instead argues more broadly that he is entitled to penalties for all unpaid benefits dating back to October 2022, not just those reduced in June and July 2023. *See* Pet'r's Br. at 11. However, the WCJ's decision is unclear on this point, and the record contains evidence supporting Petitioner's consistent claim that the retroactive benefits were never paid. Petitioner consistently maintained throughout the litigation that Employer failed to issue the back payment required by the stipulation. *See* Penalty Pet., 5/24/23.[6] At the August 23, 2023 hearing, counsel represented that Petitioner "was never paid as per your initial decision [on April 21, 2023]" awarding benefits retroactive to October 24, 2022, and that this failure formed the primary basis of the penalty petition. *See* Hr'g Tr., 8/23/23, at 8. Petitioner likewise testified that he

---

[6] Petitioner indicated that he "has not received any payments following [the] WCJ's [d]ecision granting payment of indemnity benefits." *See* Penalty Pet., 5/24/23.

never received the retroactive indemnity benefits owed under the stipulation. *See id.* at 17-18.[7]

Further, the record reflects that Employer did not begin issuing workers' compensation payments until approximately early June 2023, at which point Petitioner began receiving weekly benefits that were immediately reduced by the asserted credit. *See id.* at 18-21; WCJ's Dec., at 5. This timeline lends support to Petitioner's testimony that the retroactive benefits awarded to him in April 2023 were never paid, because the only payments he ever received were the "reduced" ongoing weekly benefits beginning in June 2023, rather than any retroactive payment. *See* Hr'g Tr., 8/23/23, at 18-21.

Finally, the extensive discussion between Employer and Hartford Insurance regarding proper reimbursement for the short-term and long-term disability benefits further supports an inference that the retroactive workers' compensation benefits had not yet been issued. That dispute arose only after Employer began making weekly workers' compensation payments around early June 2023 and sought to recoup the prior disability payments through a credit. *See id.* at 18-21. Had the retroactive benefits already been paid, it is unlikely that the reimbursement issue would have been confined to a credit applied only to the June and July payments; rather, it is likely that any asserted entitlement to a credit would have arisen when Employer first began issuing workers' compensation benefits.

---

[7] Petitioner responded "as of today, no" to the following question by his counsel:

> As per [the stipulation agreement], you'd be paid from October 21 onwards, from the initial payment from October of 2022 to approximately April 21, 2023. I calculate that approximately there would be about $16,000 owed in retro[active] benefits and you would net about 12 or 13,000 of those. Did you ever receive those benefits, Sir?

Hr'g Tr., 8/23/23, at 17-18.

Notwithstanding this evidence, the WCJ's decision reasoned, and the Board agreed, that the only established violation of the Act concerned the reduction of benefits in June and July 2023, emphasizing the absence of evidence demonstrating that Employer failed to issue payment or that Petitioner did not receive the retroactive benefits due under the stipulation. *See* WCJ's Dec. at 6-8. On this basis, the WCJ concluded that Petitioner failed to meet his burden of proving that benefits outside the June and July 2023 period were untimely or improperly paid. *See id.*

However, we are unconvinced that the record is devoid of evidence supporting Petitioner's claim that he was never paid the retroactive benefits. To the contrary, Petitioner consistently asserted nonpayment, offered testimony to that effect, and identified the absence of payment corresponding to the retroactive award. *See* Hr'g Tr., 8/23/23 at 8, 17-18. The WCJ's decision does not clearly explain whether he rejected this evidence or found it not credible. *See* WCJ's Dec. Moreover, the proceedings below were largely dominated by the dispute between Employer and Hartford Insurance concerning reimbursement of the short-term and long-term disability benefits. *See* Hr'g Tr., 8/23/23, at 18-21. As a result, the WCJ's findings were focused on the June and July 2023 underpayments and do not squarely address whether Employer complied with its obligation to issue the retroactive benefits awarded under the stipulation, even though Petitioner's penalty petition asserts that he was not paid at all. *See* WCJ Dec. This lack of clarity is significant, as it bears directly on whether additional violations of the Act occurred and whether further penalties may be warranted. As such, we reverse and remand this case to clarify this ambiguity.

## III. CONCLUSION

Although substantial evidence exists to support the Board's decision to impose a 50 percent penalty on the underpayments Petitioner received in June and July 2023, *see Miller*, 47 A.3d at 209, the record, viewed in its entirety, reveals unresolved questions regarding whether Employer ever issued the retroactive benefits owed under the stipulation. Petitioner consistently asserted nonpayment, and the record contains evidence supporting that claim, yet the WCJ's decision does not clearly resolve this issue. Given the ambiguity created by the focus on the dispute between Employer and Hartford Insurance and the lack of explicit findings on the retroactive payment under the stipulation, the Board's affirmance leaves a material factual question unresolved.

Accordingly, we reverse the Board's decision and remand the case to the WCJ to consider the entire penalty petition. On remand, the WCJ shall make additional findings and clarify whether Employer issued the retroactive benefits required by the stipulation, and in turn, whether any additional penalties are warranted.

**LORI A. DUMAS, Judge**

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Aron Richline,                :

          Petitioner        :

                          :    No. 1512 C.D. 2024

         v.                  :

                          :

Tractor Supply Company (Workers'   :

Compensation Appeal Board),      :

          Respondent     :

## O R D E R

AND NOW, this 2nd day of July, 2026, the order of the Workers' Compensation Appeal Board, entered October 23, 2024, is REVERSED and REMANDED for the Workers' Compensation Judge to consider the entire penalty petition and clarify whether Aron Richline adequately received benefits under the claim petition granted on April 21, 2023.

Jurisdiction relinquished.

 

**LORI A. DUMAS, Judge**